## Sergio v. Hackman, Executor

*John Landis*, for plaintiff.

*William Cooper* and *Robert Bellwoar*, for defendants.

TREDINNICK, J., December 17, 1971.—Plaintiff in this equity action seeks (1) to set aside an agreement of sale of real estate between defendants Hackman (executor of owner's estate) and Murray (buyer), and (2) to compel Hackman to convey the real estate in question to plaintiff pursuant to an agreement of sale proffered by plaintiff, allegedly in accordance with an option held by the latter.

After a preliminary hearing, a decree was entered denying a preliminary injunction. The parties having filed a stipulation that the preliminary hearing be considered the final hearing, the matter is now ripe for adjudication.

The facts may be briefly recited as follows:

In January 1970, plaintiff entered into a five-year lease of a portion of the premises with Hackman's decedent. That lease contained an option accorded plaintiff to purchase the entire property, should lessor-owner decide to sell, at a price and for terms equal to any bona fide offer made by a third party. The owner died on May 18, 1971, and the property was placed on the market at a $39,500 figure. In mid-August 1971, Hackman called plaintiff and asked him whether he would be interested in purchasing the property for $30,000. Plaintiff indicated he would have to think the proposition over. In mid-September, he contacted his attorney, who prepared an agreement of sale for that figure. Before that agreement was submitted to Hackman, plaintiff received from Hackman a release which, if executed, would have extinguished plain-

tiff's option to match an offer of $37,500 submitted, with 10 percent down money, by Murray. This was plaintiff's first knowledge that an apparently bona fide offer had been made for the property by a third party. The Murray agreement was dated September 24, 1971, and the release which it apparently triggered was delivered to plaintiff on September 28, 1971. Notwithstanding that knowledge, plaintiff made two offers to the estate in rapid succession: one for $30,000 and a second for $30,000, plus an offer to pay off a $14,000 obligation to the estate immediately, rather than over a period of years as the contract in that connection provided. Both offers were rejected by Hackman. Plaintiff having refused to execute the release, Hackman on October 1, 1971, gave plaintiff until Tuesday, October 5, 1971, at 5 p.m. to match the Murray offer. On October 5th, plaintiff requested a one-day extension, which Hackman refused. On October 6, 1971, plaintiff submitted an agreement wherein he offered to purchase the property for $37,500, submitting therewith a judgment note for $3,750 executed by himself and his wife as down money.

On the late afternoon of October 5th, when plaintiff requested the one-day extension, Hackman's attorney was advised by the cooperating broker who had produced the Murray sale, that Murray would not hold his offer open another day. Murray had on September 30th agreed to a five-day extension of his offer. As heretofore noted, Hackman accepted the Murray contract on October 5th.

It is axiomatic that where an option fails to specify a period of time within which it must be exercised, then it must be acted upon within a reasonable time under all the circumstances: Orlowski v. Moore, 198 Pa. Superior Ct. 360 (1962). Obviously, the ques-

tion presented here is simply whether or not the five-day period given plaintiff to meet the Murray offer was reasonable under the circumstances.

Plaintiff contends that it was unreasonable to expect him to arrange the requisite financing within five days, particularly since a weekend intervened. It may first be noted that Murray's offer was contingent upon obtaining certain financing. Plaintiff could, therefore, have legitimately included the same contingency in his agreement. Secondly, it may properly be inferred that financing was available, or at least thought to be available by plaintiff, as he had, in his offer of $30,000, plus retirement of his $14,000 obligation, risked a commitment of $44,000 in cash had the offer been accepted. What plaintiff had to decide in the five days, then, was not whether he had financing, but whether he could carry the obligations he would have to assume to meet the Murray offer. That was something he could consider probably better over the weekend than during the week when he presumably was busy with his business enterprise. Furthermore, he had been aware for a considerable period of time prior to October 1st that he would be required to act on an agreement, and it may be presumed that he had evaluated his position much before that date.

Considering the matter from the estate's point of view, Hackman, as executor, was obliged to dispose of the property on the best possible terms. When faced with a statement that Murray would withdraw his offer unless accepted on October 5th, Hackman took the bird in hand rather than count upon the one in the bush. Under the circumstances, he was obliged in his fiduciary capacity to so do. We conclude, under the circumstances, that the time limit set by Hackman was reasonable.

As it turned out, plaintiff's late offer was not a

"match" of the Murray offer in any event. Hackman had 10 percent in cash from Murray. Plaintiff's late offer was predicated not on cash, but on a judgment note. A judgment note is obviously a far cry from cash.

Defendant Murray has counterclaimed for damages allegedly suffered by Murray as a result of a claimed unjustified interference by plaintiff with Murray's contract. It would be sufficient cause to dismiss the counterclaim that defendant failed to introduce any evidence as to the extent of the damages. However, we dismiss the claim on the basis that we do not consider the award of such damages to be equitable under all the circumstances.

Accordingly, we enter the following:

### DECREE NISI

And now, December 17, 1971, plaintiff's complaint and defendant Murray's counterclaim are dismissed.

The prothonotary, in accordance with the rules of civil procedure, shall give notice to counsel of the filing of this adjudication, and unless exceptions are filed within 20 days of such notice, this decree will become final upon praecipe filed.